UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTONIA L. GLASCOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:12-cv-1692-RLY-TAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

The parties appeared by counsel November 26, 2013, for an oral argument on Plaintiff's claim for disability benefits. Set forth below is the Court's oral ruling from the bench following that argument. As set forth below, the Magistrate Judge recommends that the ALJ's decision be affirmed, and that judgment be entered against the Plaintiff and in favor of the Defendant. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

THE COURT: Going back on the record now I have taken an opportunity to consider the arguments that were raised on oral argument as well as the record as a whole, and I will now give you my ruling. I want to thank the lawyers for their presentations, and I think it would be correct to say that this is a case that primarily causes the Court to examine the

Plaintiff's mental limitations in connection with her alcohol abuse in determining whether the ALJ properly denied the claims and benefits.

In overview of the factual background, I think it is helpful in giving us a starting point, so I will highlight some of the facts that I think are the most significant. Those are as follows: In February of 2001, the Plaintiff underwent an intelligence test administered by a school psychologist, and she was 11-years-old at that time. The psychologist interpreted the results to mean that the Plaintiff was functioning in the borderline range of general intelligence.

In February of 2007 a psychologist examined Plaintiff for the state disability determination service. She was 17 years old at the time and reported being a junior in high school and was in regular classes except for her math class. She had a disability -- excuse me, a learning disability as it related to math. The psychologist concluded that the Plaintiff had a borderline intelligence. That is in the record at page 431.

In July of 2008 a psychologist examined the Plaintiff in order to provide a neurophysical -- excuse me, a neurophysiological assessment and consultation as well as a vocational evaluation. At that time Plaintiff was 19-years-old and a graduate of high school, and she reported that she had been accepted to attend a university. But she apparently decided to apply to a technical college due to some financial issues. She was also working at a daycare at that time, but she was not driving a car because she had repeatedly failed the driving test.

The psychologist found that Plaintiff performed in the borderline range of general intellectual ability and showed basically intact memory skills. The psychologist stated that most post high school academic work would be extremely challenging for her but found that there were many vocational opportunities that were open to her that did not require any further education.

2

Then in the record at pages 474 through 481 is an evaluation from a psychologist for the state DDS dated July 2009. The psychologist noted that the Claimant's employer reported she was dependable and able to work very proficiently. Plaintiff stated that she had been with her current employer for seven months and that it was going pretty good.

In December 2009, Plaintiff was evaluated by a social worker at Gallahue Mental Health Services in the record at 536, and she complained of an unstable mood and alcohol abuse and reported some compulsions about personal hygiene involving repeated showering and things of that nature.

At that time she stated she used alcohol two or three times a month and drank until she was drunk and vomited. The social worker diagnosed bipolar II disorder and alcohol abuse and stated that the Plaintiff had moderate impairments in relationship or family functioning. That is in the record at page 542.

Later that month the Plaintiff met with another social worker at Gallahue for an addiction evaluation. Plaintiff reported drinking on the weekends and craving alcohol when she was stressed. She said she consumed seven or eight drinks at a time, was good at hiding alcohol so that no one would be able to tell how much she drank.

In November of 2010, the Plaintiff presented to a social worker at Grassy, G-R-A-S-S-Y, Grassy Creek Health Center for an assessment at pages 551 through 552 of the record. Plaintiff stated that her mother had lost her home in early 2010, that her life had been on a downward spiral since then and that she had been binge drinking, was unemployed, and had no permanent place to stay.

Plaintiff stated that she drank twice a month consuming 12 drinks, that she saw the significance of her mood and drinking, and she expressed that she wanted to get a job. The social worker diagnosed attention deficit disorder, alcohol abuse, and mood disorder. The Administrative Law Judge held two hearings in this case, the first in March of 2011 and the

3

second in August of 2011.

At the March 2011 hearing, Plaintiff testified that she was 22 years old, lived with her sister, and did not drive because she couldn't pass the test. The Administrative Law Judge called psychologist Dr. Michael Carney, C-A-R-N-E-Y, who noted that the Plaintiff's counsel had raised Listing 12.05 but said that the Plaintiff did not fit that criteria due to her overall scores and functioning. She said that Listing 12.05 was not supported by the documentation.

There appears to be some discussion or argument about that in the applicability of 12.05 at the hearing, and so, the ALJ stated that he would send the Plaintiff for a psychiatric evaluation. And in May of 2011, a psychologist examined the Plaintiff for the state DDS at the request of the ALJ.

During that evaluation the Plaintiff reported that she had been diagnosed with an alcohol problem and regularly drank a 12-pack of beer within a two- or three-hour period when she was depressed. That is in the record at page 563.

She stated that she got money for alcohol from her brother -- excuse me, her mother, but told her mother that the money was for personal items. Plaintiff said that her mother knew she drank but did not know that she drank as much as she did. She also reported taking four to five showers a day because she didn't like germs.

The psychologist stated that due to borderline intellectual functioning, Plaintiff had a mild impairment in making judgments on simple work-related decisions and moderate impairments in handling complex matters. The psychologist also stated that due to bipolar disorder and continuing alcohol abuse, the Plaintiff had moderate or marked impairments in areas concerning interpersonal functioning. The psychologist addressed whether Plaintiff's alcohol abuse contributed to her limitations and wrote that Plaintiff used alcohol to a heavy extent and that it was unclear whether she attempted to work while drunk. That is in the transcript at page 568.

Turning now to the August 2011 hearing, Psychologist Dr. Ellen Rozenfeld, R-O-Z-E-N-F-E-L-D, Ellen Rozenfeld appeared at that hearing and testified. Dr. Rozenfeld noted that Plaintiff was diagnosed with bipolar II disorder, alcohol abuse, and borderline intellectual functioning but not mild mental retardation.

Dr. Rozenfeld stated that Plaintiff clearly had some cognitive defects -- or deficits, excuse me, which suggested that she was a slow learner. Dr. Rozenfeld found it significant that the record contained a letter from Plaintiff's past employer, indicating she was dependable, proficient at her work, had a normal ability to concentrate, and had no problems understanding, remembering, and carrying out instructions.

In discussing Plaintiff's bipolar disorder and alcohol abuse, Dr. Rozenfeld noted that Plaintiff started drinking in late 2009, after the date of the letter from her employer, and that it was in late 2009 that the bipolar diagnosis appeared. She stated that Plaintiff's borderline intellectual functioning was a severe impairment and that her bipolar disorder was related to her alcohol use, although she could not determine whether it was an independent condition.

With that factual background, we will set forth the standard review, which is that the findings of the commissioner are conclusive if supported by substantial evidence pursuant to 42 U.S.C. Section 405(g) and numerous case law, including Powers v. Apfel, A-P-F-E-L, 207 F.3d 431, 434 (7th Cir. 2000).

As stated at the outset of this hearing, it appears as though there are four issues that are raised by the briefs. And those arguments are as follows: First, that the ALJ erred in not finding that the Plaintiff had a condition that met or equals the criteria of Listing 12.05C.

Number 2, the ALJ improperly evaluated the effects of her alcohol use.

Number 3, the ALJ made an improper credibility determination.

And No. 4, the ALJ did not account for her limitations in social functioning and concentration, persistence, or pace.

5

I would note that Mr. Mulvany raised an additional argument during the oral argument today, asserting error pursuant to Listing 12.04. As Mr. Mulvany had acknowledged, that was not an argument that he raised in his opening brief or in his reply brief, and I find that any argument with respect to 12.04 listing has been waived.

With respect to the first issue that I did mention, the ALJ provided a detailed discussion regarding Plaintiff's cognitive impairment and found that the evidence supported that she had no lower than borderline intellectual functioning. That is in the transcript at page 51.

Similarly, Dr. Rozenfeld found that Plaintiff's cognitive condition did not meet or equal Listing 12.05 and explained that this listing required that there be an indication of mental retardation and commensurate adaptive deficits.

Dr. Carney made the same finding at an earlier hearing. The ALJ incorporated Dr. Rozenfeld's specific finding that the Plaintiff had no lower than borderline intellectual functioning based on her IQ and achievement scores, educational placement, adaptive skills, and diagnoses.

Substantial evidence supports the ALJ's finding that the Plaintiff had borderline intellectual functioning and not mental retardation. This evidence includes Plaintiff's academic background. As noted by the ALJ, Plaintiff graduated from high school on time with 80 percent of her time spent in regular classes. That is in the record at 50 and 443.

The ALJ also noted that Plaintiff was classified as having a learning disability as opposed to being educatably mentally handicapped or cognitively disabled or impaired. Plaintiff's transition services plan indicated that she intended to enroll in a university. Plaintiff did apply and was accepted but was unable to attend apparently for financial reasons. Rather, she attended technical college and made some progress towards a degree.

In addition, Dr. Rozenfeld described a letter sent by Plaintiff's employer regarding her ability to function. This letter, which we have discussed, was related to Plaintiff's duties as

6

an assistant teacher at a preschool and involving work supervising children. The director of the preschool stated in the letter that Plaintiff was dependable, worked very proficiently, and had no problems in any area of functioning and was flexible, transcript pages 335 through 37.

Dr. Rozenfeld found that Plaintiff was diagnosed with borderline intellectual functioning, not mild retardation. The record contains numerous cognitive assessments from medical sources, all of whom opined that Plaintiff had borderline intellectual functioning. Substantial evidence supports the ALJ's finding that Plaintiff had borderline intellectual functioning and not mental retardation.

It is true that the ALJ failed to mention 12.05 expressly by name, but the ALJ did a detailed analysis that obviously applied the appropriate factors and considerations. In fact, 12.05 was specifically addressed at the first hearing and referred to by Dr. Carney, which resulted in a follow-up psychological evaluation. So the 12.05 was considered by the ALJ.

Turning to the second issue which relates to the Plaintiff's alcohol use and abuse, I find that substantial evidence supports the ALJ's conclusion that Plaintiff would not be disabled if she were not drinking. Dr. Rozenfeld's opinion and other evidence in the record provides substantial evidence for those findings.

The record reveals and the ALJ noted that according to the letter from her employer that I have mentioned, Plaintiff was doing very well in 2009 despite her borderline intellectual functioning. That changed in 2009, in late 2009. And in December 2009, Plaintiff sought treatment for mood instability and alcohol abuse. She stated that she used alcohol two or three times a month and drank until she was drunk and vomited.

A social worker diagnosed bipolar disorder and alcohol abuse. In November 2010, Plaintiff presented to a social worker at a different facility and reported that she was binge drinking, unemployed, and had no permanent place to stay. She stated that she drank twice a month, consuming 12 drinks, and said that she saw the significance of her mood drinking -- of

7

her mood and drinking.

In the record at page 568 it states, quote, Claimant uses alcohol regularly and to a fairly heavy extent, end quote.  This was a May 5, 2011 clinical assessment.  Dr. Rozenfeld opined that Plaintiff's bipolar disorder was related to her alcohol use, although she could not determine whether it was an independent condition.

Dr. Rozenfeld stated that given her combination of alcohol abuse and bipolar disorder, Plaintiff would be most limited in her ability to be dependable and show up. Dr. Rozenfeld also stated that without considering alcohol use, Plaintiff would be able to understand, remember, and carry out simple instructions, adapt to routine changes, and regularly attend work.

The ALJ reasonably relied upon Dr. Rozenfeld's opinion and finding that Plaintiff was disabled when using alcohol but not disabled when removing her alcohol abuse from consideration.

The Plaintiff argues that the ALJ's questioning of Dr. Rozenfeld was improper and consisted of leading questions, but during argument, counsel acknowledged that all of those questions may, in fact, not be leading.  I do not find that all the questions were leading, and I have referenced some of those during the oral argument, nor do I believe that the form of the questions improperly influenced the testimony of Dr. Rozenfeld, a medical expert psychologist.

The third issue relates to the credibility determination, and the ALJ's credibility assessment does lack a thorough analysis.  Indeed, on page 57 of the ALJ's opinion, where the specific finding is made that the Plaintiff -- excuse me, on page 57 of the ALJ's opinion where the specific finding was made that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible, the ALJ does not lay out his reasoning.

However, a review of the ALJ's decision as a whole reveals the bases of his conclusion.  The ALJ's decision reviews the evidence in detail and considered a wide variety of

evidence in determining whether Plaintiff was disabled absent her alcohol abuse. This evidence includes the medical source opinions and Plaintiff's IQ and achievement scores, educational placement, adaptive skills, and work history. That is in the transcript at pages 50 through 53.

The ALJ is in the best position to determine a witness's truthfulness and forthrightness, which he did in this case and which the Plaintiff had testified via video. This Court will not overturn an ALJ's credibility determination unless it is patently wrong, consistent with the case of Skarbek, S-K-A-R-B-E-K v. Barnhart, B-A-R-N-H-A-R-T, 390 F.3d 500 at 505, (7th Cir. 2004). While a more thorough and contemporaneous analysis of Plaintiff's credibility would have been preferable, substantial evidence supports the ALJ's credibility finding.

Turning to the fourth and final issue regarding functioning, concentration, persistence, and pace, this argument appears to be a bit of a throw-in. It is not adequately developed and contains no meaningful argument. Plaintiff primarily appears to be relying upon the case of Yost v. Astrue from the Northern District of Illinois 2012.

The Court in Yost discussed whether certain limitations included in a hypothetical question to a vocational expert were sufficient to account for a moderate restriction and concentration, persistence, or pace when the ALJ did not explicitly include that restriction in the hypothetical question. I don't find that Yost is applicable here because the ALJ explicitly asked the vocational expert what work could be performed by a person who was limited to tasks that require that she would have moderate deficits in concentration, persistence, and pace but would have the ability to understand, remember, and carry out simple instructions.

Accordingly, Plaintiff fails to demonstrate any error in regard to this issue, nor am I persuaded by the Plaintiff's citation to Kangail, K-A-N-G-A-I-L v. Barnhart, 454 F.3d 627 at 630 (7th Cir. 2006), which, in any event, was raised for the first time in his reply brief.

In conclusion, for the reasons I have set forth on the record, I find the ALJ's decision supported by substantial evidence and the decision of the Commissioner is affirmed. Thank you very much.

Dated:  12/13/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov